## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

UNITED STATES LIFE INSURANCE   )
COMPANY OF AMERICA IN THE   )
CITY OF NEW YORK,   )
   )
     Plaintiff,   )
   )
v.   )     CV : 3:07-cv-01071-WKW
   )
RONNIE JAMES HERRING, MD,   )
   )
     Defendant.   )

### PLAINTIFF UNITED STATES LIFE INSURANCE COMPANY OF AMERICA IN THE CITY OF NEW YORK'S MEMORANDUM OF LAW IN SUPPORT OF ITS RENEWED MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS

Plaintiff United States Life Insurance Company of America in the City of New York ("U.S. Life"), through its undersigned counsel, submits this memorandum in support of its renewed motion to dismiss Defendant's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). As grounds for this motion, U.S. Life shows unto the Court as follows:

### BACKGROUND

1.    On or about August 24, 2001, Defendant, Ronald J. Herring, submitted a written application to procure an insurance policy for disability coverage from U.S. Life. (A true and correct copy of the application is attached

hereto as Ex. A.)[1]  On that application, Defendant made numerous misstatements and omitted material facts concerning his mental and medical condition, history, treatment and diagnosis.  Specifically, he failed to disclose that he suffered from and had been treated for Narcolepsy since at least 1998.

2.    Unaware of the material misrepresentations and omissions made by Defendant, U.S. Life issued Disability Income Policy Certificate Number 9500161094 to Defendant on November 1, 2001.  (A true and correct copy of the policy is attached hereto as Ex. B.)

3.    Defendant filed a claim for benefits in March, 2007.  (A true and correct copy of the claim form is attached hereto as Ex. C.)  On his application for benefits Defendant listed "Narcolepsy" as his disability.  He also listed 1998 as the date he was first treated for this condition—three years *before* he applied for the policy at issue in 2001.

4.    In processing Defendant's claim for disability benefits, documents from Defendant's various medical care providers were obtained.  Those medical records made clear that Defendant made multiple material misrepresentations and

---

[1] This Court can properly consider all documents attached hereto without converting this motion to dismiss into one for summary judgment.  *See Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005) ("[C]ourt may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed.").  All four documents attached to this motion are central to the claims at issue here and are undisputed.

omissions on his application, including, but not limited to, his failure to disclose that he suffered from and had been extensively treated for Narcolepsy prior to 2001.

5.    On December 6, 2007, U.S. Life sent Defendant a letter informing him that his application for benefits was being denied based on material misrepresentations made during the initial application process.  (A true and correct copy of the letter is attached hereto as Ex. D.)  U.S. Life included a check for $13,513.54, representing a full refund of all premiums paid under the policy.

6.    On December 7, 2007, U.S. Life filed an action in this Court seeking declaratory judgment as to its right to rescind Defendant's policy based on the material misrepresentations and omissions made on Defendant's application for insurance. (Compl.)

7.    On December 28, 2007, Defendant answered U.S. Life's Complaint and filed several counterclaims.  (Answer.)  Said counterclaims are far from clear, and as argued below, each claim is due to be dismissed as Defendant has failed to state a claim upon which relief can be granted.

## ARGUMENT

### I.    Defendant's Counterclaims Misunderstand U.S. Life's Declaratory Judgment Action

As an initial matter, Defendant's counterclaims make no sense in light of the current and only stated basis on which U.S. Life rescinded Defendant's policy.

01589770.1

Counterclaim One centers on Defendant's purported purchase of an "own occupation" disability policy. (Answer at 4.)  Although anything but clear, all of Defendant's counterclaims appear to argue that U.S. Life wrongfully denied coverage based on Defendant's ability to perform "some occupation."  Defendant alleges that U.S. Life represented that "said policy of insurance would provide insurance proceeds to the Defendant in the event the Defendant ever became disabled and unable to perform the duties of his 'own occupation.'"  (*Id.*) Defendant further avers that the "representations made by the Plaintiff that the Plaintiff would provide insurance proceeds to the Defendant in the event the Defendant ever became disabled and unable to perform the duties of his 'own occupation' were false and Plaintiff knew they were false."  (*Id.* at 5.)

While it is true that the policy at issue defines total disability as the insured's inability to perform the duties of his "current occupation" for the first sixty months of disability, and then as the insured's inability to perform "any gainful job" thereafter (*see* Ex. B at 6.), this has absolutely nothing to do with the rescission issues currently before this Court.  U.S. Life's Complaint makes no allegations regarding Defendant's ability to perform his job or any job for that matter.  U.S. Life seeks a declaration of its right to rescind Defendant's policy based on the fraudulent misrepresentations made during the application process.  All of Defendant's counterclaims can be read to hinge on these alleged "own occupation"

grounds, and therefore, all are due to be dismissed as entirely irrelevant to the matter at hand.    Even so, U.S. Life next addresses the varied reasons each individual claim should be dismissed under Rule 12(b)(6).

## II.    Each Individual Counterclaim is Due to be Dismissed

Defendant's counterclaims all fall flat and are due to be dismissed.  His own failure to truthfully and honestly complete his application for insurance has brought these matters before the Court.

> A candid and truthful answer would have enabled the insurer to discover the true facts with reference to the insured's health. Insurance companies are entitled to candid and truthful answers, and when such candor is withheld and involves matters material to the risk, no just complaint can be raised, when, . . . after investigations, the falsity is discovered and the policies issued in reliance upon the truthfulness of the statements, are avoided.

*Sweat v. Prudential Ins. Co.*, 744 So. 2d 949, 951 (Ala. Civ. App. 1999) (quotations and citations omitted, alteration in original).  Defendant can raise no complaint, and U.S. Life had every right to rescind the policy in question as it detrimentally relied upon Defendant's fraudulent misstatements.

### A.    Defendant Cannot Sustain a Viable Fraud Claim

In addition to being based on an alleged wrongful "own occupation" denial, Counterclaim One should be dismissed as (1) it has not been plead in accordance with Fed. R. Civ. P. 9 and (2) Defendant cannot prove the elements necessary to raise a proper fraud claim.

### 1.    Counterclaim One Does Not Meet the Particularity Requirements of Rule 9

Defendant's Counterclaim One is anything but clear. It basically alleges that U.S. Life knowingly made false representations to Defendant and that Defendant relied on those representations to his detriment in purchasing a policy for insurance. (Answer at 4-5.) Based on the vague language used, U.S. Life can only presume that Defendant is making a fraudulent misrepresentation claim. In raising that claim, Defendant must disclose precisely what allegedly fraudulent statements were made, when they were made, where they were made, and who made them. *See Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002). None of this information is included in Defendant's Answer. There is no indication of what "representations" were even made, much less how they were false. U.S. Life has no way of meaningfully responding to the allegations of this counterclaim. Accordingly, it should be dismissed with prejudice, or at the very least Defendant should be required to file a more definite statement.

### 2.    Defendant Cannot Prove the Elements Necessary to Sustain a Fraudulent Misrepresentation Claim

In order to make out a viable claim for fraudulent misrepresentation, a party must prove: (1) a false representation (2) concerning a material existing fact (3) [reasonably] relied upon by the plaintiff (4) who was damaged as a proximate result. *Fisher v. Comer Plantation, Inc.*, 772 So. 2d 455, 463 (Ala. 2000). Here,

01589770.1

Defendant can prove neither the first nor the fourth element.

Defendant has not and cannot show that U.S. Life made a false representation. Defendant alleges that U.S. Life represented that "said policy of insurance would provide insurance proceeds to the Defendant in the event the Defendant ever became disabled." (Answer at 4.) At the time U.S. Life made this "representation," it was certainly true. Had Defendant properly and honestly filled out his application for insurance, U.S. Life would have paid any benefits rightfully due. U.S. Life rescinded the policy because Defendant failed to honestly represent his medical history and condition when applying for coverage. Thus, it is Defendant and not U.S. Life that made the false representations. Had Defendant fully and faithfully answered the questions propounded on the application, this matter would not be before this Court.

Likewise, because it was Defendant and not U.S. Life that engaged in deceit and concealment, Defendant cannot prove that he was "damaged" by U.S. Life's "representations." Defendant "does not have the policy of insurance that was promised to him," (Answer at 5), not based on any representation made by U.S. Life but based on his own misrepresentations. U.S. Life made clear to Defendant that the answers provided on the application where critical in the underwriting process, but Defendant failed to fully disclose his medical history all the same. (*See* Ex. A ("I understand that my application for group insurance will be accepted

or declined on the basis of these statements"; "I understand that this information will be used by United States Life to determine eligibility for insurance").) Accordingly, any damages existing in this matter have been sustained by U.S. Life in having to sort through Defendant's deception. Defendant can show no damages. His material misstatements foreclosed any entitlement to benefits, and all premiums have been properly refunded. Defendant cannot prove the four elements necessary to sustain a fraud claim, and this counterclaim should be dismissed.

**B.    Defendant Cannot Sustain a Viable Failure to Disclose Claim**

Counterclaim Two of Defendant's Answer asserts that "Plaintiff failed to disclose to Defendant that said disability coverage insurance policy would not pay as promised and that Plaintiff would have to meet conditions other than the conditions set forth in the insurance policy."[2]    (Answer at 5.)    Again, the allegations are vague and difficult to decipher, but Defendant appears to be alleging fraudulent suppression.[3] This claim cannot stand.

Fraudulent suppression requires proof of:  (1) a duty to disclose the facts; (2)

---

[2] U.S. Life is unaware of what "conditions" it would have to meet in order for Defendant to be entitled to benefits.  U.S. Life can only presume that Defendant meant to plead that "*Defendant* would have to meet conditions other than the conditions set forth in the insurance policy." (Answer 5.)  Regardless, it is clear that no additional conditions were placed on Defendant and that U.S. Life's rescission of the policy was in full accord with U.S. Life's contractual authority.

[3] U.S. Life reasserts its Rule 9, failure to plead with particularity, argument as to Counterclaim Two.  This claim is equally vague and does not meet the what, when, where, and who requirements of Rule 9.  Defendant fails to state what "above stated facts and information" U.S. Life purportedly failed to disclose. (Answer at 5.)  This counterclaim should either be dismissed, or Defendant should be required to replead his allegations.

concealment or non-disclosure of the facts; (3) materiality of the undisclosed fact; (4) reliance on the non-disclosure; (5) reasonable reliance under the circumstances; (6) proximate cause; and (7) injury. *See, e.g., Gen. Motors Corp. v. Bell*, 714 So. 2d 268, 280 (Ala. 1996). Defendant's claim fails as he cannot allege any fact which U.S. Life had a duty to disclose but failed to do so.

Defendant's policy was rescinded solely because he failed to fully represent his medical history on his application—there is no other reason. Defendant was clearly aware that he suffered from Narcolepsy in 2001, as his application for benefits lists 1998 as the onset of his disabling condition. (Ex. C.) Nevertheless, when he applied for disability insurance in 2001, he failed to make any mention of this disorder. (Ex. A.) Defendant was also aware of the importance of truthfulness on the application; that "fact" was clearly disclosed. Furthermore, there were no additional "conditions" required for Defendant to receive coverage, and Defendant fails to specify what is meant by this allegation. In truth, it was only Defendant's material misstatements that voided his coverage. Because Defendant can point to no "undisclosed fact," he cannot prove any of the other elements of fraudulent suppression—a duty to disclose, concealment, materiality, reliance (reasonable or not), cause or injury.

Additionally, as worded, Defendant appears to argue that U.S. Life "failed to disclose" that it had the authority to rescind the policy based on fraudulent

misstatements made during the application process. This allegation, in addition to being directly refuted by the policy, is barred by the applicable statute of limitations. If Defendant was unaware that U.S. Life would avoid a policy based on his fraudulent misstatements, any such "failure to disclose" occurred at the time of application. Here, Defendant's policy became effective in November 2001. Thus, the two-year statute of limitations ran out in 2003. *Jones v. Kassouf & Co., P.C.*, 949 So. 2d 136, 139 (Ala. 2006) ("In Alabama, any fraud claim must be brought within two years of the accrual of the claim." (citation omitted)). The policy document itself, provided to Defendant upon issuance, made U.S. Life's right to rescind clear. Accordingly, Defendant knew, or should have known, in 2001 that U.S. Life could rescind coverage on certain grounds. He is barred from bringing this claim now, and it should be dismissed.

### C. Because U.S. Life Neither Misrepresented Nor Concealed Material Information, Defendant Cannot Sustain a Claim for Innocent, Reckless, Negligent or Wanton Misrepresentation and/or Concealment

Counterclaim Three alleges that U.S. Life "innocently, recklessly, negligently or wantonly made the aforementioned misrepresentations and/or concealed the material information and facts." (Answer at 6.) Again, Defendant's reference to the "aforementioned" misrepresentations and concealed facts is completely indecipherable. U.S. Life has no way of knowing what Defendant is actually alleging. Furthermore, Defendant again appears to assert that U.S. Life

misrepresented or concealed its intention to deny coverage in the event Defendant made fraudulent misstatements on his application. To the extent that is his argument, any such claim is barred by the statute of limitations. *See Smith v. National Sec. Ins. Co.*, 860 So. 2d 343 (Ala. 2003). As argued, Defendant was aware of U.S. Life's right to rescind in 2001 when he received a copy of the contract for insurance. Aside from informing Defendant that all statements made on the application are critical to coverage determinations (*see* Ex. A), the policy made clear that fraudulent misrepresentations would void the policy. (See Ex. B at 13 (expressly noting that U.S. Life will only use a person's "fraudulent misstatements" to contest insurability after the policy has been in force for two years).) No fact was misrepresented or concealed, be it innocently, recklessly, negligently or wantonly, and the statute of limitations has run on any possible claim. Thus, yet again, Defendant has failed to state a claim upon which relief can be granted.

### D.   Defendant Cannot Sustain a Negligent and/or Wanton Failure to Procure Insurance Claim Against U.S. Life, as Such Claims Can Only Be Raised Against the Agent

Further, Defendant claims that U.S. Life negligently and/or wantonly failed to procure insurance on his behalf. This claim cannot be raised against U.S. Life, the insurer, as Alabama courts have made clear that "[a] suit based on [a failure to procure insurance] is *not an action based on contract between the insured and the*

*insurance company*, but an action based on an agency relationship between the insured and the agent who represents the insurance company." *Armstrong v. Life Ins. Co. of Va.*, 454 So. 2d 1377, 1379 (Ala. 1984), *overruled on other grounds by Hickox v. Stover*, 551 So. 2d 259 (Ala. 1989) (emphasis added). Accordingly, a failure to procure claim can only be raised against an agent. Defendant has not sued the agent in this case, thus this claim is due to be dismissed.

**E.  Defendant's Breach of Contract Claim is Directly Linked to U.S. Life's Motion for Declaratory Judgment and is Improperly Asserted as a Counterclaim**

Defendant also raises a breach of contract counterclaim. This claim should be dismissed, as it is intimately tied to the underlying declaratory judgment action and unnecessarily duplicates claims already before this Court. There is no reason for the Court to expend the time and energy necessary to entertain this counterclaim, when the question of whether U.S. Life breached the contract for insurance in this case is the foundation of  U.S. Life's initial Complaint. Defendant's success on this claim depends only on U.S. Life's success in their declaratory judgment action. Accordingly, this claim too should be dismissed.

**F.  U.S. Life was Entitled to Rescind Defendant's Policy and Therefore Did Not Engage in a Bad-Faith Refusal to Pay Benefits**

Counterclaim six alleges that U.S. Life "intentionally and in bad-faith failed and refused to pay benefits due." Defendant appears to allege a "normal" refusal

to pay claim,[4] which requires that he prove: (1) an insurance contract between the parties and a breach thereof; (2) an intentional refusal to pay benefits; (3) *"the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason)"*; and (4) "the insurer's actual knowledge of the absence of any legitimate or arguable reason." *Nat'l Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982) (emphasis added).

Defendant cannot sustain his burden of proof, and this claim should be dismissed. On its face, U.S. Life's Complaint clearly states a "reasonably legitimate or arguable reason for [the] refusal." There is no way that Defendant can prove "the absence of a debatable reason" for rescinding the policy. Defendant must "go beyond a mere showing of nonpayment and prove a *bad faith* nonpayment without any reasonable ground for dispute. Or, stated differently the [insured] must show that the insurance company had no legal or factual defense to the insurance claim." *Garrett v. Auto-Owners Ins. Co.*, 689 So. 2d 179, 182 (Ala. Civ. App. 1997) (emphasis in original). There is no question that Defendant failed to fully disclose his medical condition in 2001 when applying for disability

---

[4] There are basically two ways a plaintiff can make out a bad-faith refusal to pay claim. He can either prove the four requirements, stated *infra*, to establish a "normal" claim, or "failing that, can prove that the insurer's failure to investigate at the time of the claim presentation procedure was intentionally or recklessly omissive." *State Farm Mut. Auto. Ins. Co. v. Smith*, 956 So. 2d 1164, 1167 (Ala. Civ. App. 2006) (citation omitted). Defendant fails to specify whether he is making a "normal" or "abnormal" claim. He merely asserts that U.S. Life "has intentionally and in bad-faith failed and refused to pay benefits due." (Answer at 7.) Based on this vague pleading and the fact that Defendant next argues failure to investigate, U.S. Life assumes Defendant is raising a "normal" bad-faith refusal to pay cause of action.

coverage. He knew he had Narcolepsy and yet made no mention of the condition.

Accordingly, there is no question that U.S. Life had both a legal and factual

defense to Defendant's claim for benefits. This claim should be dismissed.

### G.    U.S. Life Diligently and Fully Investigated Defendant's Claim and Discovered Numerous Material Misrepresentations and Concealed Facts, Properly Resulting in Rescission

Finally, Defendant alleges that U.S. Life "intentionally and in bad-faith

failed to fully investigate Defendant's claim" for benefits. (Answer at 8.) While it

appears that Defendant's prior counterclaim sets out a "normal" bad-faith claim,

this counterclaim seems to raise an "abnormal" bad-faith claim:

> In the "normal" bad-faith case, the plaintiff must show the absence of any reasonably legitimate or arguable reason for denial of a claim. In the "abnormal" case, bad faith can consist of: 1) intentional or reckless failure to investigate a claim, 2) intentional or reckless failure to properly subject a claim to a cognitive evaluation or review, 3) the manufacture of a debatable reason to deny a claim, or 4) reliance on an ambiguous portion of a policy as a lawful basis for denying a claim.

*Singleton v. State Farm Fire & Cas. Co.*, 928 So. 2d 280, 283 (Ala. 2005). Thus,

Defendant must show: "(1) that the insurer failed to properly investigate the claim

or to subject the results of the investigation to a cognitive evaluation and review

and (2) that the insurer breached the contract for insurance coverage with the

insured when it refused to pay the insured's claim. *State Farm Fire & Cas. Co. v.*

*Slade*, 747 So. 2d 293, 318 (Ala. 1999). "[I]n order to prove a bad-faith-failure-to-

investigate claim, the insured must prove that a proper investigation would have

revealed that the insured's loss was covered under the terms of the contract." *Id.*

Defendant cannot make the necessary proof here. No investigation would have revealed that he was entitled to benefits. U.S. Life did not *deny* his claim; it *rescinded* his policy based on his own fraudulent misstatements. No amount of investigating would change the fact that Defendant failed to disclose that he suffered from Narcolepsy in applying for coverage and then subsequently claimed total disability based on that same condition. "An insurance company is entitled to all material information bearing upon the obligation it undertakes in issuing a policy." *Liberty Nat'l Life Ins. Co. v. Hale*, 230 So. 2d 526, 530 (Ala. 1969). Defendant deprived U.S. Life of critical information and is, therefore, foreclosed from seeking benefits now.

## CONCLUSION

Thus, U.S. Life asks this Court to dismiss all counterclaims raised by Defendant. As a fundamental matter, Defendant misunderstands U.S. Life's reason for rescission and raises irrelevant counterclaims based on the "own occupation" language in the policy. Additionally, each individual counterclaim is due to be dismissed as Defendant has failed to state a claim upon which relief can be granted. His own fraudulent misstatements entitled U.S. Life to rescind the policy.

01589770.1

WHEREFORE, PREMISES CONSIDERED, Plaintiff U.S. Life prays that this Court dismiss all of Defendant's counterclaims against it with prejudice and enter judgment in favor of U.S. Life.

Respectfully submitted,


/s/ David P. Donahue
Michael D. Mulvaney
David P. Donahue
Attorneys for Plaintiff United States
Life Insurance Company of America
in the City of New York

OF COUNSEL
Maynard, Cooper & Gale, P.C.
1901 Sixth Avenue North
2400 Regions Harbert Plaza
Birmingham, Alabama 35203-2618

01589770.1

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon the following listed persons by Electronic Mail, this the 18th day of July, 2008.

**Christopher E. Sanspree**
**SANSPREE & McRIGHT, LLC**
**603 Martha Street**
**Montgomery, Alabama 36104**

/s/ David P. Donahue
OF COUNSEL

01589770.1

# APPLICATION

**SPONSORED DISABILITY INCOME INS** PLAN

**EXHIBIT A**

**PLEASE REPLY BY:** September 28, 2001

Ronnie James Herring, M.D.
3100 Lafayette Pkwy
Opelika, Al 36801-2320

*9500 1461094*

**MONTHLY BENEFIT AMOUNT APPLIED FOR:**
$ 5000 (in increments of $100.)
Maximum benefit amount is 66 2/3% of your earned monthly income up to $10,000/month.

☒ Check here if you are under age 40 and applying for the Future Benefit Increase Option.

**ELIMINATION PERIOD:** (Must select one):
☐ 2 Mo.   ☒ 3 Mo.   ☐ 6 Mo.   ☐ 12 Mo.

**PREMIUMS TO BE PAID:**
☐ Annually   ☐ Semi-Annually   ☒ Quarterly
If billing choice is not made, you will automatically be billed semi-annually.

**Here's How to Apply:**
- Answer all the questions on the application.
- Date and sign the application.
- Please print or type.

If you have made corrections or strike-outs, you must initial them.

**Questions?**
Call
1-800-458-5736

Please indicate whether address shown is
☒ home ☐ office
If not indicated, please provide your primary home address here:   00106960267   2010112R3A

Home Address: _____
_____Street_____ _____City_____ ___State___ ___Zip___

Business Address: _____
_____Street_____ _____City_____ ___State___ ___Zip___

E-mail Address: _____

Date of Birth: 07/04/62   Birthplace: AL / USA   Height 6'0"   Weight 170
Mo. Day Year                 State/County

Annual Earned Income 120,000   Sex: M☒ F☐   Home Phone No. (334) 742-1120
After Bus. Expenses

Occupation: ☒ Physician   Specialty: Internal Medicine   Office Phone No. (774) 480-2260

Have you been practicing less than 1 year? ☐ Yes ☒ No   Social Security No. 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

**Insurability Questions**
Answer each question by checking the "Yes" or "No" box, as it applies.

Circle specific disorders experienced.

|  |  | CHECK ONE |
|---|---|---|
| 1. Are you now, and have you been for the last 30 days, performing all the duties of your occupation for 30 or more hours per week at your usual place of business? | | ☒ Yes ☐ No |
| 2. Have you ever had or been treated for: | | |
| a. Heart trouble or murmur, chest pain, rheumatic fever, elevated blood pressure, stroke? | | ☐ Yes ☒ No |
| b. Injury, pain or disorder of neck or back? Sciatica? Any disabling injury? | | ☒ Yes ☐ No |
| c. Arthritis, gout, bursitis or rheumatism? | | ☒ Yes ☐ No |
| d. Dizziness, epilepsy, convulsions, recurrent headaches, glaucoma, cataract or other disorder of the eyes or ears? | | ☐ Yes ☒ No |
| e. Disease or disorder of rectum or anus? Varicose veins or other vascular disorder? | | ☐ Yes ☒ No |
| f. Diabetes? Sugar, albumin or pus in urine? Thyroid or other glandular disorder? | | ☐ Yes ☒ No |
| g. Duodenal or stomach ulcer, or other disorder of stomach, liver, gall bladder? Colitis, Diverticulitis, or other disorder of small or large intestine? | | ☐ Yes ☒ No |
| h. Prostate disorder? Kidney stone or colic, nephritis, nephrosis or other kidney disorder? Urinary infection? | | ☐ Yes ☒ No |
| i. Menstrual, uterine or ovarian disorder? Disorder of the breast? | | ☐ Yes ☒ No |
| j. Bronchitis, emphysema, pleurisy, difficult breathing, blood spitting or other disorder of lung or nose? | NA | ☐ Yes ☒ No |
| k. Cancer or other tumor? Deformity or loss of limb? Congenital defect? | | ☐ Yes ☒ No |
| l. Mental or emotional problem requiring help of a physician or psychologist? | | ☐ Yes ☒ No |
| m. A surgical operation? A surgical operation advised, but not performed? | | ☒ Yes ☐ No |
| 3. Have you ever had treatment by, or consultation with, any hospital, institution, physician or practitioner within the past 5 years? | | ☒ Yes ☐ No |

If " Yes" to any part of question 2 or 3, or "No" to question 1, give details here:

Use a separate sheet of paper if more space is needed for answers.

| Question No. | Condition | Date Occurred | Duration | Degree of Recovery | Names & Addresses of Physicians, Hospitals or Clinics Consulted |
|---|---|---|---|---|---|
| 2b. | Herniated Disc Lumbar | 2/1981 | 2 mos. | 100% | ____ ____ Hopkins Med. Clinic |
| 2b. | Lumbar Fusion | 1997 | 3 mos. | 100% | UAL Doctor of Org Columbus, GA |
| 2m. | Knee Surgery Appendectomy | 8/1980 | 2 wk | 100% | William Tarpley M.D. Opelika AL |

4. Do you have any disability insurance in force?   ☐ Yes ☒ No
   If YES, please indicate companies and amounts _____

5. Will this coverage applied for, replace any insurance in force now?   ☐ Yes ☒ No
   If YES, please indicate companies and amounts _____

## AUTHORIZATION AND DECLARATION OF PERSON GIVING A STATEMENT OF INSURABILITY

1. To the best of my knowledge and belief, all the statements made above are true and complete.
2. I understand that my application for group insurance will be accepted or declined on the basis of these statements.
3. I authorize the sources stated below to give to United States Life, or any consumer reporting agency acting on its behalf, information about me. Such information will pertain to my employment, other insurance coverage, and medical care, advice, treatment or supplies for any physical or mental condition. Authorized sources are: any physician or medical professional; any hospital, clinic or other medical care institution; any insurer; the ANA Insurance Agency, Inc., the Medical Information Bureau; any consumer reporting agency; any employer.
4. I understand that this information will be used by United States Life to determine eligibility for insurance.
5. I understand that I may revoke this authorization at anytime. I agree that such revocation will not effect any action which United States Life has taken in reliance on the authorization. I understand that this authorization will not be valid after 30 months, if not revoked earlier.
6. I know that I have the right to receive a copy of this authorization if I request one.
7. I agree that a photocopy of this authorization is as valid as the original.

**Important Notice** – Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which may be a crime. This notice does not apply in Virginia.

Signature _Ronnie J. Herring_   Date Signed 8/24/01

G-19025                          DI

DIPAP-7/01

| For Company Use Only |
|---|
| POLICY #  G-208,475 |
| CERT.# _____ |

Explanation (Cont)

| Question # | Condition etc... |
|---|---|
| 3 | Flog Care Health Care |

Daniel Hartigan M.D.
Mayo Clinic - Jacksonville
Primary Care Internal Medicine
4500 San Pablo Rd
Jacksonville, FL 32246

Nurs. Serv. Form #141

THIS SCHEDULE PAGE R̶P̶ ̶C̶ES ALL PREVIOUSLY ISSU̶ ̶ ̶ ̶ ̶HEDULE PAGES
PROVID̶ED̶ ̶ ̶HE PREMIUM IS PAID WHEN D̶U̶E̶.

## SCHEDULE PAGE

### AMA-Sponsored
### Disability Income Plan



**Underwritten by:**
The United States Life Insurance Company of America in the City of New York

### *PERSONAL INFORMATION*

CERTIFICATE NUMBER:                    9500161094

INSURED:                               Ronnie James Herring, MD
                                       3100 Lafayette Pkwy.
                                       Opelika, AL 36801-2320

ORIGINAL EFFECTIVE DATE:               November 01, 2001

AGE ON ORIGINAL EFFECTIVE DATE:        39

DATE OF BIRTH:                         July 04, 1962

### *BENEFIT AND PREMIUM INFORMATION*

| MONTHLY BENEFIT FOR TOTAL DISABILITY: | ELIMINATION PERIOD: | EFFECTIVE DATE: |
|---|---|---|
| $6,700 | 3 Months | November 01, 2005 |

PREMIUM PAYMENT MODE:                  Quarterly

RENEWAL PREMIUM DUE DATE(S):           February 01   May 01
                                       August 01   November 01

### *SUPPLEMENTARY OPTIONAL BENEFITS*

Future Increase Option          Yes

*A copy of the application for this change, if required, is attached to this Schedule Page and made a part
of the original Certificate.*

G-19001

Date Printed:   10/27/06

**THE UNITED STATES LIFE Insurance Company in the City of New York**
*(Called United States Life)*

125 Maiden Lane
New York, New York  10038

---

### CERTIFICATE OF INSURANCE

The term "Schedule Page" refers to the form which is attached.  The Schedule Page is added to and made a part of your certificate.

United States Life certifies that the person named on the Schedule Page is insured for the benefits described in this certificate.  This insurance is subject to the eligibility and effective date requirements of the group policy.

### DATE YOUR INSURANCE TAKES EFFECT

Your insurance will take effect on the date shown on the Schedule Page.

You must be Actively at Work and an Eligible Member on the date your insurance is to take effect.  If you are not, your insurance will take effect on the first of the month coinciding with or next following the date you resume such work.

The date insurance is to take effect might not be a scheduled workday.  If so, you will be considered Actively at Work on such date if you were Actively at Work on your last scheduled workday.

### CANCELLATION DURING FIRST 30 DAYS

You may cancel the insurance described in this certificate at any time during the 30 day period after you receive this certificate.  Mail this certificate with your written request for cancellation to the AMA Insurance Agency, Inc., the authorized agent of the Policyholder, who will refund any premiums paid.

### IMPORTANT NOTICE

The benefits described in this certificate are provided by group policy G-208,475, issued to the **AMERICAN MEDICAL ASSOCIATION**, the Policyholder.

This certificate is a summary of the group policy provisions which affect your insurance.  It is evidence of the insurance provided by such policy.

The group policy is a contract between United States Life and the Policyholder. The persons insured thereunder are not considered parties to this contract.  Therefore, it is not required that they be notified of or consent to any change in the group policy.

This certificate replaces any certificate previously issued by United States Life to you under this group policy.

G-19001
FP

G-208,475

## CERTIFICATE INDEX

| SECTION | PAGE(S) |
|---|---|
| Schedule of Benefits | 2-3 |
| Definitions | 4-5 |
| Termination-Date Insurance Ends | 5 |
| Long Term Disability Benefits | 6-10 |
| Exclusions | 11 |
| Pregnancy Benefits | 11 |
| Premium Payments | 12 |
| Premium Calculation | 12 |
| End of Insurance Provided by The Group Policy | 12 |
| Reinstatement | 12 |

General Provisions

| | |
|---|---|
| Misstatements | 13 |
| Payment To A Minor Or Incompetent | 13 |
| Assignment | 13 |
| Compliance With Law | 13 |
| Gender | 13 |
| Incontestability | 13 |

General Provisions For Accident And Health Insurance

| | |
|---|---|
| Filing a Claim | 14 |
| Payment of Claims | 14 |
| Physical Exams | 14 |
| Time Limit On Legal Actions | 14 |

| | |
|---|---|
| Audit | 15 |
| Conversion Privilege | 15 |

## SCHEDULE OF BENEFITS

### LONG TERM DISABILITY BENEFITS

Elimination Period                          See Schedule Page

Monthly Benefit
  -for Total Disability*                    See Schedule Page

  -for Residual Disability                  An amount determined each month by this formula:

$$\frac{\text{Loss of Monthly Income}}{\text{Prior Monthly Income}} \quad \text{x} \quad \begin{array}{c}\text{Monthly Benefit for}\\\text{Total Disability}\end{array}$$

The first six months of payments for Residual Disability will be the greater of: (a) 50% of the Monthly Benefit for Total Disability; or (b) the Monthly Benefit for Residual Disability

* The elected amount, when the monthly benefit being applied for is added to the monthly benefit of all other disability income insurance, whether issued or applied for, may not exceed 66 2/3% of your Monthly Income or $15,000, whichever is less.

Maximum Benefit Period:

  -if Total or Residual Disability
    begins before age 60                    To age 65

  -if Total or Residual Disability begins:
    -on or after age 60
      but before age 63                     60 months
    -while age 63                           54 months
    -while age 64                           48 months
    -while age 65                           42 months
    -while age 66                           36 months
    -while age 67                           30 months
    -while age 68                           24 months
    -while age 69                           18 months
    -on or after age 70                     12 months

  -if Total Disability is due to mental, nervous or emotional disorders and begins:
    -before age 69                          24 months
    -while age 69                           18 months
    -on or after age 70                     12 months

**SCHEDULE OF BENEFITS (Continued)**

## Change in Amount of Insurance

### For a Decrease

Any decrease in the amount of insurance will take effect on the earlier of the date of receipt by the authorized agent of the Policyholder of your written request for the decrease, or the date you requested.

### For an Increase

An increase in your amount of insurance will take effect on the first of the month coinciding with or next following the date United States Life approves the request, provided the increased premium is paid when due. The Monthly Benefit, when the increased amount being applied for is added to the monthly benefit of all other disability income insurance, whether issued or applied for, may not exceed 66 2/3% of your Monthly Income or $15,000, whichever is less.

You must be Actively at Work on the date an increase in your insurance is to take effect. If you are not, such increase will take effect on the first of the month coinciding with or next following the date you resume such work. The date the increase is to take effect might not be a scheduled workday. If so, you will be considered Actively at Work on such date if you were Actively at Work on your last scheduled workday.

## DEFINITIONS

For the purposes of the group policy:

MEMBER means (a) any active member of or physician who is eligible for membership in the American Medical Association ("AMA"), as defined in the AMA Constitution and By-laws as amended from time to time; (b) full-time employees of the AMA who are employed in an executive capacity; and (c) full-time employees of constituent associations and component societies who are employed in an executive capacity. The term "Member" does not include affiliate or honorary Members as defined in AMA's By-laws.

ELIGIBLE MEMBER wherever used in the policy means a Member who is not retired and who is Actively at Work.

ACTIVE WORK or ACTIVELY AT WORK means actively performing the full-time duties of the Member's occupation, considering the nature of the occupation and the time those engaged in a like occupation within the community normally devote to it. Members who satisfy either of the conditions which follow shall also be deemed to be Actively at Work full-time in the performance of their occupation: (1) the Member regularly devotes a lesser period of time to performing duties of the occupation than do others engaged in a like occupation within the community, and for reasons other than sickness or injury; (2) the Member, for reasons other than sickness or injury, is temporarily unemployed or absent from the full-time duties of the occupation. FULL-TIME means active work on a regular work schedule required of the Member's occupation, including the Member's specialty in the practice of medicine.

ATTENDING PHYSICIAN means:
-a medical practitioner licensed to provide medical services, or
-any other practitioner whose services, by law of the state where such services are performed, must be covered by the group policy.
Each such person must be licensed in the state where he performs the service and must act within the scope of that license. He must also be certified and/or registered if required by such state.
"Attending Physician" will not include you as an insured member or your spouse, or your or your spouse's father, mother, son, daughter, brother or sister, nor will it include an employee, business partner or business affiliate of yours.

ELIMINATION PERIOD means a period of consecutive days of Total Disability for which no benefit is payable. The duration of the Elimination Period is shown on the Schedule Page. The Elimination Period begins on the first day of Total Disability occurring after the effective date of your insurance.

INJURY means bodily injury caused by an accident which occurs while you are insured under the group policy.

SICKNESS means sickness or disease which causes a period of Total Disability which begins while you are insured under the group policy.

MONTHLY INCOME means your income from salary, wages, bonuses, commissions, fees, or other payments which you or your corporation receive or are entitled to receive for services rendered by you before Federal Income Taxes. It includes income earned but paid into pension or deferred compensation plans. It does not include loss of time benefits, dividends, interest, or payments from pensions or annuities.

**DEFINITIONS (Continued)**

RETIRED means withdrawal from the pursuit of a full-time gainful occupation.  One who has reduced the number of hours in which he is engaged in his occupation, whether such reduction occurs within a short time or a period of no more than five years, by 75% shall be presumed to be retired; provided that anyone who has reduced the number of hours in which he is engaged in such occupation due to illness or injury shall not be presumed to be retired.  An insured person who has temporarily ceased or curtailed the activities of his occupation in order to continue his professional education by participating in an educational program of a school, organization or institution shall not be considered retired.

YOU means the Eligible Member named on the Schedule Page who is insured for the benefits described in this certificate.

G-19001
DEF

---

**TERMINATION – Date Insurance Ends**

Your insurance will end on the earliest of:

1. the date the group policy ends;

2. the end of the period for which the last premium has been paid by you;

3. the date you retire;

4. the certificate anniversary coinciding with or next following the date you attain age 75;

5. the date you cease to be an Eligible Member and not Actively at Work;

6. upon the suspension or revocation in any state of your license to practice medicine as a result of a criminal act, ethical violation, or gross malpractice; or upon your surrender of your license to practice medicine in any state prior to, during, or in lieu of any medical licensure board inquiry, investigation or other action pertaining to a criminal act, ethical violation, or gross malpractice.

United States Life will refund premium pro-rata for any period for which coverage is not afforded by reason of this Section.  Termination of your insurance shall be without prejudice to any claim  for a period of continuous disability for which a benefit is payable  and which commences prior to the date of such termination.

# LONG TERM DISABILITY BENEFITS

If you become Totally Disabled while insured under the group policy and continue to be so Disabled past the Elimination Period, United States Life will pay to you the benefits described below.

The Elimination Period is shown on the Schedule Page.

## DEFINITIONS

TOTALLY DISABLED or TOTAL DISABILITY means:
- during the Elimination Period for up to the next 60 months, your complete inability to perform the substantial and material duties of your Current Occupation, and not engaged in any other occupation.
- after benefits have been paid for up to 60 months, your complete inability to perform the substantial and material duties of any gainful job for which you are reasonably fit by training, education or experience. The Total Disability must be a result of an Injury or Sickness and must begin while insured under the group policy. To be considered totally disabled, you must also be under the Regular Care and Attendance of an Attending Physician.

REGULAR CARE AND ATTENDANCE means observation and treatment to the extent necessary under existing standards of medical practice for the condition causing Disability.

CURRENT OCCUPATION means the duties of the medical specialty then being practiced or of the occupation being performed immediately prior to the disability.

RESIDUAL DISABILITY means that after the Elimination Period due to Injury or Sickness:

1) You are able to do some but not all of the substantial and material duties of your Current Occupation, or you are able to do all of the substantial and material duties of your Current Occupation but for less than full-time, and in either case you have a Loss of Monthly Income of at least 20%; and

2) Your inability to perform duties as in 1) above is due to the same condition that caused the Total Disability; and

3) You are under the Regular Care and Attendance of an Attending Physician. United States Life may waive this requirement if continued care is of no benefit.

For purposes of computing the Monthly Benefit for Residual Disability: PRIOR MONTHLY INCOME means your average Monthly Income for the tax year with the highest income in the three years just prior to the start of the period of Disability for which claim is made; CURRENT MONTHLY INCOME means your Monthly Income for each month of Residual Disability being claimed; LOSS OF MONTHLY INCOME means the difference between Prior Monthly Income and Current Monthly Income. Loss of Monthly Income must be caused by the Residual Disability for which claim is made. The amount of the loss must be at least 20% of Prior Monthly Income to be considered as Loss of Monthly Income.

DISABILITY means Total and/or Residual Disability, if applicable.

## MONTHLY BENEFITS

The Monthly Benefit for Total Disability will begin to accrue on the day after the Elimination Period ends. It will be paid in the amount shown on the Schedule Page.

The Monthly Benefits payable for Residual Disability are described below. This Benefit will be paid according to the formula shown in the Schedule of Benefits, if applicable.

Limited benefits will be paid for Disability due to mental, nervous, or emotional disorders. These benefits are described on the next page.

**Benefits for part of a month**
To determine the benefit to be paid for a period of less than a full month:

-divide the benefit by 30
-multiply the result by the number of days in such period.

## DURATION OF BENEFITS

Monthly benefits will be paid up to the Maximum Benefit Period shown in the Schedule of Benefits.

In no event will you be considered to have more than one disability at the same time, regardless of multiple causes.

The benefit will end on the earliest of the following dates:

1. you fail to give required proof of continuing Total or Residual Disability;
2. your Total or Residual Disability ends;
3. the Maximum Benefit Period ends; or
4. you die.

If the group policy ends, this will not act to end the Maximum Benefit Period.

## MONTHLY BENEFITS PAYABLE FOR RESIDUAL DISABILITY

After you are Totally Disabled, if you become engaged in any gainful occupation, United States Life will pay the Monthly Benefit for Residual Disability shown in the Schedule of Benefits as follows:

1. Benefits will start on the day of Residual Disability following the Elimination Period, or if later, immediately after the end of compensable Total Disability during the same period of Disability.

2. Benefits will continue while you are Residually Disabled during a period of Disability, but the combined period for which benefits for Total and Residual Disability are payable will not exceed the Maximum Benefit Period for which Total Disability benefits are payable.

Residual Disability benefits will not be paid for any days for which Total Disability benefits are paid.

United States Life can require any proof which is considered necessary to determine your Current Monthly Income and Prior Monthly Income. Also, United States Life or a representative retained by United States Life will have the right to examine your financial records, as may reasonably be required.

**MONTHLY BENEFITS PAYABLE FOR RESIDUAL DISABILITY (Continued)**

In the event you go back to work at any occupation other than the one for which you were considered Totally Disabled, and no Residual Disability Benefit is paid for a period of twenty-four (24) consecutive months, you will be conclusively presumed to have established a new occupation and the period of Disability will cease for the purposes of the group policy. All subsequent periods of Total Disability will relate to performance of duties of your new occupation.

**LIMITED MONTHLY BENEFITS TO BE PAID FOR MENTAL, NERVOUS OR EMOTIONAL DISORDERS**

If Disability is due to a mental, nervous or emotional disorder and begins prior to age 68, the Maximum Benefit Period per Disability will be limited to 24 months.

If Disability begins prior to age 63, benefits may be paid beyond the 24 month period, as follows.

If:
-you are confined in a Hospital at the end of 2 years, and
-such confinement has been continuous for the immediately preceding 12 months, and
-you are under 65 years of age,
then benefits will continue to be paid during the confinement, but not beyond the date you attain age 65.

"Hospital" means a licensed institution which is approved by the Joint Commission on the Accreditation of Hospitals. "Hospital" does not mean a place, or part of one, which is used mainly for: the aged; the chronically ill; convalescents; drug addicts; alcoholics; a rest home; a nursing home; or custodial, educational or rehability care.

**REHABILITATION BENEFIT**

Benefits may be payable if you participate in a program of occupational rehabilitation. If, during a period of Total Disability, you notify United States Life in writing that you want to participate in a program of occupational rehabilitation, United States Life will consider paying for certain expenses you incur. United States Life's involvement will be determined by written agreement with you. Generally, United States Life may pay the reasonable costs of training and education which are not covered under health care insurance, workers' compensation, or any public fund or program.

A program of occupational rehabilitation must be designed to help you return to work and be:

    1. a formal program of rehabilitation at an accredited graduate school;
    2. a recognized program operated by the federal or state government; or
    3. any other professionally planned rehabilitation program of training or education.

Your participation in such program will not, of itself, be considered a recovery from Total Disability.

## PRESUMPTIVE DISABILITY BENEFIT

You will be presumed Totally Disabled if Injury or Sickness results, while insured under the group policy, in the total and irrecoverable loss of:

1. speech;
2. entire hearing in both ears;
3. entire sight of both eyes; or
4. the use of both hands, or both feet, or of one hand and one foot. For this item, "total and irrecoverable loss" means the entire lack of controlled movement of the hand or foot.

Total Disability begins on the date of the loss. Benefits will be paid in accordance with the benefits for Total Disability provisions of the group policy. However, you do not have to satisfy an Elimination Period to receive benefits under this provision. The Residual Disability benefit provision will not apply if benefits are paid under this provision.

United States Life will presume you to be Totally Disabled whether or not you are able to work at any occupation or require Regular Care and Attendance of an Attending Physician.

The loss must occur prior to your 75th birthday. In no event will benefits be paid in addition to any other benefit paid under another provision of the group policy.

## SUCCESSIVE PERIODS OF DISABILITY

Successive periods of disability occurring after the Elimination Period, which are due to the same or related causes and are not separated by return to performance of your occupation for twelve months or more during which no benefits are payable shall be considered as a continuation of the previous period of disability for purposes of the group policy. For purposes of the preceding sentence, "successive periods of disability" are periods in which the Monthly Benefit payable to you would be $100.00 or more.

A separate Elimination Period will apply for each separate period of Disability.

## FUTURE INCREASE OPTION

Your Schedule Page shows whether or not you have elected this option. If you have, your Monthly Benefit for Total Disability, as shown on the Schedule Page, may be increased, without evidence of good health, once up to three years following the effective date of your insurance under the group policy, to reflect increases in your Monthly Income.

In order to qualify for such an increase, you must submit proof of your increased income satisfactory to United States Life. The increase in your amount of insurance will then take effect on the first of the month coinciding with or next following the date United States Life approves your proof of increased income.

However, in no event will any such increase in benefits take effect:
-if you are Disabled on the date it would otherwise take effect; or
-if your adjusted Monthly Benefit would exceed $15,000; or
-if you are age 40 or over on the date the increase would otherwise take effect.

## WAIVER OF PREMIUM

During any period of Total Disability or Residual Disability, including the Elimination Period, and while a Benefit is payable, United States Life will waive the payment of any premium becoming due while Total or Residual Disability exists. Waiver will be made according to the mode of premium payment that is in effect when Total or Residual Disability starts. Your certificate shall remain in force until the next premium due date, subject to the TERMINATION provision, except as to the payment of premiums.

**EXCLUSIONS**

No monthly benefit will be paid for Disability due to:

-intentionally self-inflicted injury or attempted suicide, while sane or insane;

-a declared or undeclared war or an act of war;

-the use of any narcotic drug or other substance which is (a) subject to the Federal or the various state controlled substances acts, unless the prescription shall have been written by an Attending Physician other than you, or (b) required by law to be dispensed by prescription only and used for other than a bonafide medical purpose as it relates to you or for other than the treatment of an existing medical condition.

Benefits will not be paid, or accrued, for any period of time while you are incarcerated.

Benefits will be paid either for Injury or for Sickness, but not for both, during any concurrent period of Disability.

G-19001
LTD-5

---

**PREGNANCY BENEFITS**

FOR COMPLICATIONS OF PREGNANCY

The benefits to be paid by any section of the group policy for a Complication of Pregnancy will be the same as those to be paid for a Sickness.

COMPLICATIONS OF PREGNANCY means:
-conditions distinct from pregnancy, but caused or affected by it, which require hospitalization, provided the pregnancy does not terminate during such hospitalization
-non-elective caesarean section
-a terminated ectopic pregnancy, or
-spontaneous termination of pregnancy which occurs when a viable birth is not possible.

FOR PREGNANCY PAID AS-ANY-OTHER-SICKNESS

As used in the group policy for the benefits shown below, the term "Sickness" includes:
-pregnancy
-childbirth
-abortion
-complications of any abortion, and
-related medical conditions

all referred to as "pregnancy".

The benefits to be paid by the group policy for Total or Residual Disability due to pregnancy will be the same as those to be paid for Total or Residual Disability due to Sickness.

G-19001
P(A)

-11-

G-208,475

## PREMIUM PAYMENTS

The first premium for your insurance is due on the date insurance takes effect. After that, premiums will be due on each renewal premium due date as long as you remain eligible for insurance.

Payment can be made to the United States Life office or to its authorized agent. Payment of any premium will not maintain insurance in force past the next premium due date, except as provided in the Grace Period provision.

### Changes in Premium Rates

United States Life may change the renewal premiums. However, such change may only be made on a premium due date, and then no more than once in any 12 consecutive month period, or when the terms or conditions of the group policy are modified. Changes in premium rates caused by a change in your attained age will become effective on the certificate anniversary date coinciding with or next following the date of change.

## PREMIUM CALCULATION

The premiums for your Long Term Disability insurance will be based on: (a) the amount of insurance you elect and are approved for, and (b) your attained age as of the date your application is received by United States Life or its authorized agent. Changes in premium rates caused by a change in your attained age will become effective on the certificate anniversary date coinciding with or next following the date of change.

## END OF INSURANCE PROVIDED BY THE GROUP POLICY

### IF PREMIUM IS NOT PAID  -  GRACE PERIOD

Each premium, after the first, may be paid up to 31 days after its due date. This period is the grace period. The insurance provided by the group policy will stay in effect during this period. If the premium is not paid by the end of this period, such insurance will end at that time.

United States Life may extend the grace period by written notice. Such notice will state the date insurance will end if the premium remains unpaid.

Premiums must be paid for a grace period and any extension of such period.

### REINSTATEMENT

You may reinstate this insurance if it ceases as stated under Grace Period. Reinstatement must be made within 90 days after the due date of the first unpaid premium.

The reinstated certificate shall cover only loss resulting from such Injury as may be sustained after the date of reinstatement and loss due to such Sickness as may begin more than 10 days after such date. In all other respects, you and United States Life shall have the same rights as existed under the group policy immediately before the due date of the defaulted premium, subject to any provisions endorsed hereon or attached hereto in connection with the reinstatement.

## GENERAL PROVISIONS

### MISSTATEMENTS

A person's age, sex or any other data may be misstated. If so, the correct data will be used to determine if insurance is in force. If insurance is in force, the premium and/or benefits will be adjusted according to the facts.

### PAYMENT TO A MINOR OR INCOMPETENT

If any beneficiary or payee is a minor or is incompetent to receive payment, United States Life will pay his guardian. United States Life will not be liable for such payment after it is made.

### ASSIGNMENT

United States Life will not be bound by any assignment unless it is in writing and is recorded at its home office. United States Life is not responsible for the validity of an assignment.

### COMPLIANCE WITH LAW

On the date the group policy takes effect, some of its provisions may conflict with an applicable law. If so, any such provision is changed to comply with the minimums required by such law.

### GENDER

Male pronouns will be read as female where it applies.

### INCONTESTABILITY

United States Life will not use a person's statements, except for fraudulent misstatements, relating to his insurability to contest insurance after it has been in force for 2 years during his life. United States Life will also not use such statements, except for fraudulent misstatements, to contest an increase or benefit addition to such insurance after the increase or benefit has been in force for 2 years during his life. Those statements must be in a written application signed by the person.

## GENERAL PROVISIONS FOR ACCIDENT AND HEALTH INSURANCE

### FILING A CLAIM

To file a claim, follow these steps:

**Step 1:**

A claimant should send a written notice of claim to United States Life or its agent within 20 days of a loss or as soon thereafter as reasonably possible. No special form is required to do this. The notice need only identify the claimant and the Policyholder.

**Step 2:**

When United States Life or its agent receives the notice, a proof of claim form will be sent to the claimant.

**Step 3:**

The claimant should receive the proof of claim form within 15 days of the date United States Life received the notice of claim.

If the form is received within such time, it should be completed, as instructed, by all persons required to do so. Additional proof, if required, should be attached to the form.

If the form is not received within such time, the claimant may provide written proof of claim to United States Life on any reasonable form. Such proof must state the date the injury or sickness began and the nature and extent of the loss.

**Step 4:**

Proof of claim must be sent to United States Life within 90 days after the Elimination Period. United States Life may require more proof as often as needed to verify disability.

If a notice or proof is sent later than the times shown above, United States Life will not deny or reduce a claim if the notice or proof was sent as soon as possible. However, except in the event of legal incapacity, proof of claim may not be submitted more than one year after otherwise required.

### PAYMENT OF CLAIMS

All benefits will be paid as they accrue.

### PHYSICAL EXAMS

United States Life, at its expense, has the right to examine the insured. This may be done as often as needed to process a claim.

### TIME LIMIT ON LEGAL ACTIONS

Legal action may only be brought against United States Life during a certain period. This period begins 60 days after the date proof of claim was filed and ends 3 years after the end of the period within which such proof is required.

G-19001
GPAH-1

-14-

G-208,475

**AUDIT**

United States Life or a designated representative of United States Life has the right to review your or your corporation's financial records for information concerning this insurance.  The review may be done as frequently as United States Life may reasonably request.

**CONVERSION PRIVILEGE**

If the policy is terminated at the request of the Policyholder, and the Policyholder does not provide a replacement plan with another insurance company, you shall be entitled to have, without evidence of insurability, guaranteed renewable coverage without supplementary benefits, provided written application for the coverage shall be made, and the first premium paid thereon to United States Life within 31 days. after such termination and provided further that:

    (a)    the converted coverage shall be in the amount equal to or, at your option, an amount less than the amount of your disability insurance under the policy which ceases because of such termination;

    (b)    the premiums payable under the converted coverage shall be at United States Life's then customary rate applicable to the amount, the policy form and the class of risk to which you then belong and to your attained age on the effective date of the converted coverage; and

    (c)    any converted coverage issued under the terms of this section shall take effect at the end of the 31 day period during which application for the converted coverage may be made.



**AMA**
INSURANCE
A G E N C Y

"HE UNITED STATES LIFE Insur⋯ e Company    L. McLe⋯

An American General Company

**LONG TERM DISABILITY BENEFITS—ASSOCIATION PLANS**

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES A STATEMENT OF CL
CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY F
MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME.
PLEASE ANSWER ALL QUESTIONS FULLY. THIS WILL HELP AVOID UNNECESSARY CORRESPONDENCE.
INSTRUCTIONS: INSURED COMPLETE PART I, HAVE PHYSICIAN COMPLETE PART II, AND RETURN TO ⋯

Disability RMS
One Riverfront Plaza
Westbrook, ME 04092-9700

MAR 1 5 2007

**PART I—INSURED'S STATEMENT**

| NAME OF ASSOCIATION | POLICY NO. | CERTIFICATE NO. |
|---|---|---|
| American Medical Association | | 9500161094 |

| NAME OF INSURED | | | |
|---|---|---|---|
| Ronnie (Ronald) James Herring | MARITAL STATUS Married | ☒ MALE ☐ FEMALE | DATE OF BIRTH 07 \| 04 \| 196 |

| INSURED'S ADDRESS STREET & NO. | CITY | STATE | ZIP | SOCIAL SECURITY NO. | TELEPHONE NO. |
|---|---|---|---|---|---|
| 3100 LaFayette Pkwy | Opelika | AL | 36801 | 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 | (334) 742-1120 |

| EMPLOYED BY | OCCUPATION | SPECIALTY |
|---|---|---|
| Herring Spine & Rehab, Inc. | Physician | Internal Medicin |

| AVERAGE MONTHLY EARNED INCOME DURING THE TWELVE (12) MONTHS PRIOR TO DISABILITY: | GROSS $11,000.00 | NET $7750.00 |
|---|---|---|

| DATE ACCIDENT OR SICKNESS BEGAN Sickness has existed for years, but has progressively worsened. | DATE LAST WORKED Exact Date is unknown. | DATE FIRST TREATED BY PHYSICIAN FOR PRESENT DISABILITY 1998 |
|---|---|---|

| NATURE OF SICKNESS OR INJURY Narcolepsy | DID DISABILITY ARISE OUT OF EMPLOYMENT? ☐ YES ☒ NO |
|---|---|

| IF INJURED, HOW, WHEN AND WHERE DID ACCIDENT HAPPEN? | DATE TOTAL DISABILITY COMMENCED Exact date unknown, but fairly Recently. |
|---|---|
| | IF RECOVERED, GIVE DATE OF RECOVERY |

| DATE OF YOUR RETURN TO WORK: | FULL TIME | PART TIME | IF PART TIME, HOURS PER DAY |
|---|---|---|---|

**NAME AND ADDRESS OF ALL PHYSICIAN'S ATTENDING YOU FOR THIS CONDITION:**

(1.) Dr. Steven DeKich
Internal Medicine Assoc.
121 N. 20th Street
Opelika, AL 36801

(2.) Dr. Vernon Pegram
Sleep Disorders Center of AL
790 Montclair Road Suite 200
Birmingham, AL 35213

**EXHIBIT C**

Are you entitled to Benefits from any of the following for this disability?
☐ Workers' Compensation     ☐ Salary Continuance     ☐ Local, State or National Association or
☐ Social Security     ☐ Any Government Agency     Society Disability Income Plan
☒ None

If "Yes" insert policy number, name and address of insurance company or organization providing such benefits or service
and amount of payment.

| POLICY NO. | NAME AND ADDRESS | AMOUNT OF PAYMENT |
|---|---|---|

| POLICY NO. | NAME AND ADDRESS | AMOUNT OF PAYMENT |
|---|---|---|

**AUTHORIZATION**

TO PHYSICIANS OR PRACTITIONERS, HOSPITALS, CLINICS, PHARMACISTS, INSURANCE COMPANIES, MEDICAL INFORMATI
BUREAU, EMPLOYERS AND OTHER PERSONS OR INSTITUTIONS: This authorizes you to give The United States Life Insuran
Company, or its authorized representative who is employed to assist in the evaluation of my claim, any information, data or recor
you may have regarding me, my employment, my benefits or my condition (including records pertaining to psychiatric, drug
alcohol use history, and any disability I may have had). I understand that any information obtained pursuant to this authorizati
will be used to evaluate my claim and may be transferred to an agency or person employed by The United States Life Insuran
Company to assist with this purpose. I understand I have a right to request a copy of this authorization and that a copy v
be sent to me if requested. A photocopy of this authorization may be accepted by you.

3/06/07
DATE

_Ronnie J. H___
SIGNATURE OF INSURED

**PART II—ATTENDING PHYSICIAN'S STATEMENT**
**THE PATIENT IS RESPONSIBLE FOR THE COMPLETION OF THIS FORM WITHOUT EXPENSE TO THE COMP.**

NAME OF PATIENT  _Ronnie (Ronald) James Herring_    DATE OF BIRTH  _07_ / _04_ / _196_

**1. HISTORY**
  (a) When did symptoms first appear or accident happen? ..........................................................................
  (b) Date patient was unable to work because of disability ........................................... Mo_____ Day_____ Year_____
  (c) Has patient ever had same or similar condition? ................................................. Mo_____ Day_____ Year_____
    If "YES" state when and describe. ☐ Yes ☐ No
  (d) Names and addresses of other treating physicians _N. Vernon Pegram MD / Robert Doekel, MD_
                                                                _Bham_

**2. DIAGNOSIS**
  (a) Diagnosis (including any complications) _Narcolepsy with Cataplexy_
  (b) Subjective symptoms _Severe sleepiness + sleep attacks, weak spells _&_ health anxiety_
  (c) Objective findings (including current X-rays, EKG's, Laboratory Data and any clinical findings) _Sleep Study + MSLT → pathologic sleepiness scores_

**3. DATES OF TREATMENT**    Date of first visit _3/2/02_    Date of last visit _3/9/07_    Frequency _6 m._

**4. NATURE OF TREATMENT** (Including Surgery and medications prescribed, if any)
  _Stimulant therapy - Provigil_
  _Xyrem @ night_

**5. PROGRESS**
  (a) Has patient .......... ☐ Recovered?      ☐ Improved?         ☑ Unchanged?      ☐ Retrogressed?
  (b) Is patient .......... ☑ Ambulatory?      ☐ House confined?    ☐ Bed confined?    ☐ Hospital confined
  (c) Has patient been hospital confined? ☐ Yes ☑ No
    If "Yes," give Name and Address of Hospital ................................ Confined from .................... through ....................

**6. CARDIAC (If Applicable)**
  (a) Functional capacity .................... ☑ Class 1 (No limitation)         ☐ Class 2 (Slight limitation)
    (American Heart Ass'n.)             ☐ Class 3 (Marked limitation)
  (b) Blood Pressure _171_ / _112_ (Last visit)                          ☐ Class 4 (Complete limitation)

**7. PHYSICAL IMPAIRMENT** ("as defined in Federal Dictionary of Occupational Titles)
  ☑ Class 1—No limitation of functional capacity; capable of heavy work." No restrictions. (0–10%)
  ☐ Class 2—Medium manual activity." (15–30%)
  ☐ Class 3—Slight limitation of functional capacity; capable of light work." (35–55%)
  ☐ Class 4—Moderate limitation of functional capacity; capable of clerical/administrative (sedentary") activity. (60–70
  ☐ Class 5—Severe limitation of functional capacity; incapable of minimal (sedentary") activity. (75–100%)

**8. MENTAL/NERVOUS IMPAIRMENT**
  Do you believe the patient is competent to endorse checks and direct the use of the proceeds thereof? ☑ Yes ☐

**9. PROGNOSIS**
                                          **PATIENT'S JOB**           **ANY OTHER WORK**
  (a) Is patient now totally disabled?
  (b) If "NO" when was patient able to resume work? ...... ☑ Yes ☐ No       ☑ Yes ☐ No
                                        Mo____ Day____ Year____    Mo____ Day____ Year____
  (c) Do you expect a fundamental or marked change
    in the future? .................... ☐ Yes ☑ No       ☐ Yes ☑ No
  (d) If "YES" when will patient recover sufficiently
    to perform duties? .................... Mo____ Day____ Year____    Mo____ Day____ Year____
                               ☐ 1 Month ☐ 1-3 Months    ☐ 1 Month ☐ 1-3 Months
                               ☐ 3-6 Months ☐ Indefinitely   ☐ 3-6 Months ☐ Indefinitely
                               ☐ Never               ☐ Never

**10. REHABILITATION**
  Is patient a suitable candidate for further rehabilitation services? ☐ Yes ☑ No
  (i.e., cardiopulmonary program, speech therapy, etc.)

NAME (ATTENDING PHYSICIAN) PRINT  _Steven E. DeKock_    DEGREE  _MD_

STREET ADDRESS  _121 N. 20th Street_                      TELEPHONE  _334-749-3385_

SIGNATURE  _St. DeKock MD_    CITY OR TOWN _Opelika_    STATE OR PROVINCE _AL_    ZIP CODE _36801_

                                      DATE  _3/9/07_

*PLEASE RETURN THIS FORM TO THE INSURED OR TO THE ADMINISTRAT...

 

**AIG** AMERICAN GENERAL

December 6, 2007

Ronald J. Herring, M.D.
3100 Lafayette Pkwy.
Opelika, Al 36801-2320

Re:    AMA-Sponsored Policy: G208475
       Certificate Number: 9500161094

Dear Mr. Herring:

We have completed our review of your claim for benefits under your disability policy. I am sorry to inform you, however, that we must deny your claim because of information we discovered during our investigation. If you have any questions, please feel free to call me at any time.

In applying for disability coverage, you completed a written application dated August 8, 2001. Based on that application, United States Life issued AMA-Sponsored Policy G208475, which became effective November 1, 2001. A copy of the application is enclosed. In response to your claim for disability benefits, we requested access to your medical records to process your claim. Those records revealed that you made several misrepresentations when completing your application including:

(1)    Question 2(l) asked: "Have you ever had or been treated for [m]ental or emotional problem[s] requiring [the] help of a physician or psychologist." You responded "no." Nevertheless, your medical records indicate that you have suffered from depression and anxiety for years, and have been treated with both counseling and various types of antidepressant drugs throughout your adult life. Accordingly, you had "been treated for [m]ental or emotional problem[s] requiring [the] help of a physician or psychologist" well before you made a representation to the contrary in your August 8, 2001 application.

(2)    Question 3 asked: "Have you ever had treatment by, or consultation with, any hospital, institution, physician or practitioner within the past 5 years." You answered "yes," and then as requested gave details of the treatments you received during that five-year period. You disclosed three events (a herniated disc, a lumbar fusion, and

**American General Life Companies, LLC**
AIG Benefit Solutions ℠

Distributing products issued by: AIG Life Insurance Company, American General Assurance Company,
American General Indemnity Company, American General Life Insurance Company,
American International Life Assurance Company of New York, Delaware American Life Insurance Company,
The United States Life Insurance Company in the City of New York
*Member companies of American International Group, Inc.*

3600 Route 66 • Neptune, NJ 07753 • 732.922.7000 • www.aigbenefitsolutions.com
*This company does not solicit business in New York.*

Page 2
AMA

two surgeries), but you failed to disclose that you suffered from, and had undergone extensive testing and treatment for, Narcolepsy since 1998. Furthermore, you admitted in a post-claim processing form that your disability was Narcolepsy and that you were first treated for the condition in 1998. Thus, your extensive medical records and your own admission make clear that you failed to disclose that you suffer from Narcolepsy and had suffered from the condition for, at the very least, four years prior to completing your application.

The application form contained an "Authorization and Declaration of Person Giving a Statement of Insurability," which you agreed to by signing the document. That declaration specifically stated: "[t]o the best of my knowledge and belief, all the statements made above are true and complete," and "I understand that this information will be used by United States Life to determine eligibility for insurance." Additionally, there was an "Important Notice" just above the signature block of the application which provided: "Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which may be a crime."

As evidenced by both the "Authorization and Declaration" and "Important Notice," the questions asked on the application form were critical in determining your insurability. Had our underwriters been aware of the reality of your medical condition and medical history, United States Life would have declined to issue the disability coverage. Although your policy contained a contestability clause, which provided that "United States Life will not use a person's statements, except for fraudulent misstatements, relating to his insurability to contest insurance after it has been in force for 2 years during his life," your material misrepresentations constitute fraudulent misstatements and fall outside the bounds of the clause.

In view of these misrepresentations, the company deems that no insurance ever became effective and we must now void the policy as of the date it was issued. We have enclosed a check payable to you in the amount of $13,513.54 which is a full refund of all premiums paid under the policy.

We have made this decision after a careful review of all the facts known to us. If, however, there is other information or additional considerations that you believe we should take into account, please send it to us, in writing, as soon as possible. We will immediately reconsider our decision in light of this additional

Page 3
AMA

information and will respond to you as soon as possible. We realize that our investigation has taken considerable time; however, we wanted to be thorough, detailed, and accurate.

By pointing out this information, United States Life does not waive any other right or defense it may have under the policy or under law. United States Life reserves its rights to consider and rely upon additional facts and reasons, known and unknown, as appropriate.

Please feel free to call or write if you have any questions. My direct phone number is 732 922-7016.

Sincerely,

George Ashmore
Director Life & Disability Claims