IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES LIFE INSURANCE ) <br> COMPANY OF AMERICA IN THE ) <br> CITY OF NEW YORK, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> RONNIE JAMES HERRING, ) <br> ) <br> Defendant. ) | CASE NO. 3:07-CV-1071-WKW [WO] |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiff's renewed motion to dismiss Defendant's counterclaims (Doc. # 39), which is accompanied by a memorandum of law (Doc. # 40). Defendant filed a response (Doc. # 44), to which Plaintiff replied (Doc. # 45). Upon Defendant's motion (Doc. # 46), the court granted Defendant leave to file a surreply (Doc. # 47), which Defendant did (Doc. # 48). For the following reasons, Plaintiff's renewed motion to dismiss Defendant's counterclaims is due to be denied in part and granted in part.

**I. JURISDICTION AND VENUE**

Jurisdiction is exercised pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) and 28 U.S.C. § 2201 (Declaratory Judgment Act). The parties do not contest personal jurisdiction or venue, and the court finds allegations sufficient to support both.

## II.  FACTS AND PROCEDURAL HISTORY

Plaintiff United States Life Insurance Company of America in the City of New York ("United States Life") filed claims against Defendant Ronnie James Herring ("Herring") on December 7, 2007, for a declaratory judgment, and alleging breach of contract and rescission, and fraud.  (Compl. (Doc. # 1).)  United States Life claims that it is entitled to rescind Herring's disability insurance policy because Herring made material misrepresentations and omissions in his policy application but for which United States Life would not have issued the policy.  (Compl. ¶¶ 7-9, 13, 17, 21.)  More specifically, Herring allegedly failed to disclose that he had suffered from and had been treated for narcolepsy since 1998.  (Pl.'s Mem. in Supp. of Mot. to Dismiss ¶ 1.)  On November 1, 2001, United States Life issued the policy certificate, and in March of 2007, Herring filed a claim for benefits and listed narcolepsy as his disability.  (Pl.'s Mem. in Supp. of Mot. to Dismiss ¶¶ 2-3.)  In processing that claim, United States Life obtained Herring's medical records, which allegedly revealed there were misrepresentations and omissions on his application, including the narcolepsy omission.  (Pl.'s Mem. in Supp. of Mot. to Dismiss ¶ 4.)  Because of those misrepresentations, United States Life denied Herring's claim and fully refunded the premiums paid under the policy.  (Pl.'s Mem. in Supp. of Mot. to Dismiss ¶ 5.)  The next day, United States Life filed its complaint.  (Pl.'s Mem. in Supp. of Mot. to Dismiss ¶ 6.)

With his Answer, Herring asserts seven counterclaims. (Answer (Doc. # 7).) The counterclaims allege: (1) fraudulent misrepresentation, (2) fraudulent suppression, (3) reckless/mistaken misrepresentation and suppression of material information, (4) negligence/wantonness in failing to procure insurance coverage, (5) breach of contract, (6) bad-faith refusal to pay benefits under a theory of creating a debatable reason not to pay, and (7) bad-faith refusal to pay benefits under a theory of failing to fully investigate Herring's claim. (Answer ¶¶ 4-8.) United States Life moved to dismiss the counterclaims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Pl.'s Mot. to Dismiss, 1.) United States Life argues that the counterclaims are "entirely irrelevant to the matter at hand," and separately offers reasons and arguments for dismissing each individual counterclaim. (Pl.'s Mem. in Supp. of Mot. to Dismiss, 5.)

## III. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure raises the defense of failure to state a claim upon which relief can be granted.[1] Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading standards set forth in Rule 8, and if applicable, Rule 9 of the Federal Rules of Civil Procedure. To state a sufficient claim for relief under Rule 8(a)(2), the complaint must include only a "short and plain statement . . . showing that the pleader is entitled to relief."

---

[1] The requirements for complaints set out in this standard apply to counterclaims as well. The federal rules for pleading by their own terms apply to claims and allegations, not just complaints. *See* Fed. R. Civ. P. 8 & 9.

Fed. R. Civ. P. 8. Nevertheless, Rule 8 "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (citations and footnote omitted).

Rule 9(b) sets forth heightened pleading requirements for allegations of fraud or mistake. Fed. R. Civ. P. 9(b). A complaint alleging those causes of action "must state with particularity the circumstances constituting fraud or mistake[,] [though] [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* Rule 9(b) must be read, however, "in conjunction with Rule 8(a)." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997); *see also U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002). With that in mind, a complaint satisfies Rule 9 if it sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*U.S. ex rel. Clausen*, 290 F.3d at 1310 (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)).

If the complaint fails to meet the requirements of Rule 8, or, in the case of fraud, Rule 9, a court is not required to *sua sponte* grant leave to amend a complaint to a party

4

represented by counsel who never moved to amend or requested leave to amend. *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (*en banc*). A court may decline to *sua sponte* grant leave to amend a complaint if amendment would be "futile." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004); *see Spear v. Nix*, 215 F. App'x 896, 901 (11th Cir. 2007) (applying *Hall's* point on futility to review of a court's declining to *sua sponte* grant leave to amend, post *Wagner*).

## IV. DISCUSSION

United States Life accuses Herring of asserting counterclaims that "make no sense in light of the current and only stated basis on which [United States Life] rescinded [Herring's] policy." (Pl.'s Mem. in Supp. of Mot. to Dismiss, 3.) Yet United States Life provides no authority for reaching that conclusion, let alone for dismissing the counterclaims on those grounds. It has not argued why Rule 13 of the Federal Rules of Civil Procedure should bar Herring's counterclaims. Rule 13 sets out the requirements for compulsory and permissive counterclaims. A party must raise counterclaims that at the time of service are against the opposing party and "arise[] out of the same transaction or occurrence that is the subject matter of the opposing party's claim," Fed. R. Civ. P. 13(a)(1)(A); "any claim that is not compulsory" but is against an opposing party also may be raised, Fed. R. Civ. P. 13(b). If Herring's counterclaims fall outside those provisions, United States Life has failed to explain why; nor has United States Life alluded to another sufficient legal reason why the court should dismiss the counterclaims as "entirely irrelevant to the matter at hand." (Pl.'s Mem.

5

in Supp. of Mot. to Dismiss, 5.)  United States Life argues that because its challenge is not to whether Herring would be entitled to his proceeds absent grounds for rescission, Herring's counterclaims for enforcing the policy have "absolutely nothing to do with the rescission issues."  (Pl.'s Mem. in Supp. of Mot. to Dismiss, 4.)  But Herring is not bound on his *counterclaims* to address only the legal issues United States Life's claims circumscribe. Without authoritative substantiation, United States Life's general arguments for dismissal are weightless.  United States Life's motion must hinge, therefore, on the individual claims for dismissal of each count.  Each count is addressed in turn.

*Counterclaim One: False Misrepresentation*

The first counterclaim alleges that Herring entered into "an 'own occupation' disability insurance policy" with United States Life based on its representation that the policy would provide proceeds in the event that Herring ever became disabled and unable to perform the duties "of his 'own occupation.'"  (Answer, 4 ¶ 1.)  Herring alleges that he "reasonably relied" on those representations and purchased the policy, and that when he later filed a claim for disability, United States Life "manufactured a reason" to deny him benefits, causing him several specific injuries.  (Answer, 4-5 ¶¶ 2-6.)

United States Life faults this counterclaim for insufficient pleading under Rule 9 and argues that Herring "cannot prove the elements necessary to raise a proper fraud claim." (Pl.'s Mem. in Supp. of Mot. to Dismiss, 5.)  The court finds Herring sufficiently has pled the elements of fraud under Alabama law, but has failed to meet the Rule 9 pleading

6

requirements under federal law.² Herring's first counterclaim is for fraudulent misrepresentation, the elements of which are "(1) a false representation (2) concerning a material existing fact (3) relied upon by the [counter-]plaintiff (4) who must be damaged as a proximate result."³ *Earnest v. Pritchett-Moore, Inc.*, 401 So. 2d 752, 754 (Ala. 1981); Ala. Code § 6-5-101 ("Misrepresentations of material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party . . . constitute legal fraud."). Herring's counterclaim alleges all of the elements for fraudulent misrepresentation under Alabama law: (1) United States Life made a false representation that it would provide insurance proceeds under the policy if Herring ever became disabled and unable to perform the duties of his job; (2) the representation concerned United States Life's paying the proceeds under the policy, which is clearly a material fact; (3) Herring "reasonably relied" upon the representations; and (4) he was injured because he paid premiums on a policy the value of which he lost, he lost interest, he now has no insurance policy, he would have had

---

² In a diversity action, the claimant must plead the state law elements for his claims, but with sufficient particularity under federal law. *See Barrett v. Scutieri*, 281 F. App'x 952, 953 (11th Cir. 2008) (requiring claimant to set forth elements of fraud under state law but to plead with particularity under federal law); *Lundgren v. McDaniel*, 814 F.2d 600, 605 (11th Cir. 1987) ("In general, only substantive state law must be applied; federal law governs matters of procedure."); *McAllister Towing & Transp. Co., v. Thorn's Diesel Serv., Inc.*, 131 F. Supp. 2d 1296, 1302 (M.D. Ala. 2001) (Albritton, J.) ("[T]he *procedure* for pleading fraud in federal courts is governed by federal law and not state law . . . in diversity suits." (emphasis added)); *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985) ("[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule.").

³ Herring does not define his first counterclaim as a claim of fraudulent misrepresentation but the basis for his claim can be gleaned from the elements he pled, and his responsive brief labels it as such (Def.'s Resp., 3). Herring does not identify or label any of his claims with specificity in the counterclaims, instead referring to each as a consecutively-numbered counterclaim.

proceeds under another policy, and he has suffered mental anguish and emotional distress. (Answer, 4-5 ¶¶ 1-6.) Herring's counterclaim fails, however, because it does not meet the pleading requirements of Rule 9(b).[4] (Answer, 4-5 ¶¶ 1-6.) The pleading deficiencies are explained below in the consolidated discussion of the promissory fraud challenge to the first four counterclaims, *see infra* pp. 11-14.

***Counterclaim Two: Fraudulent Suppression***

Herring's second counterclaim alleges fraudulent suppression, which requires under Alabama law a showing "(1) that the defendant had a duty to disclose material facts; (2) that the defendant concealed or failed to disclose those facts; (3) that the concealment or failure to disclose induced the plaintiff to act; and (4) that the defendant's action resulted in harm to the plaintiff." *Booker v. United Am. Ins. Co.*, 700 So. 2d 1333, 1339 n.10 (Ala. 1997); Ala. Code § 6-5-102 ("Suppression of a material fact which the party is under an obligation to communicate constitutes fraud."). A duty to disclose arises "where one party has superior knowledge of a fact and the other party's having the same knowledge would cause the other party to take a different course of action." *Indep. Life & Accident Ins. Co. v. Harrington*, 658 So. 2d 892, 896 (Ala. 1994); *see* § 6-5-102 ("The obligation to communicate may arise . . . from the particular circumstances of the case."). Herring accuses United States Life of

---

[4] United States Life's other argument for dismissing the first counterclaim – that Herring cannot *prove* the elements for fraudulent misrepresentation – is inconsequential on a motion to dismiss. That argument goes to the merits of Herring's counterclaim and misapplies the standard of review. (*See* Pl.'s Mem. in Supp. of Mot. to Dismiss, 7-8 (arguing that its representation was true, and that Herring was not damaged).)

failing to disclose that Herring "would have to meet conditions other than the conditions set forth in the insurance policy before he would be entitled to insurance benefits" (Answer, 5 ¶ 8),[5] and United States Life could have superior knowledge of the conditions, if any, an insured must meet outside of those in the insurance policy.  Herring also alleges that because of United States Life's failure to disclose conditions outside of those in the insurance policy, he "changed his position and purchased [the] policy of insurance, began paying the necessary premiums to keep [the] policy in force and refrained from seeking other disability insurance coverage." (Answer 6, ¶ 9.)  As explained below in the court's consolidated discussion of the promissory fraud challenge, however, those allegations are not detailed enough to pass muster under Rule 9.  *See infra* pp. 11-14.

United States Life argues that the second counterclaim fails in addition because the statute of limitations for fraud bars it.  (Pl.'s Mem. in Supp. of Mot. to Dismiss, 10 ("Defendant's policy became effective in November 2001.  Thus, the two-year statute of limitations ran out in 2003.").)  United States Life notes that under Alabama law, any fraud claim must be brought within two years of the accrual of the claim.  (Pl.'s Mem. in Supp. of Mot. to Dismiss, 10.); *see* Ala. Code § 6-2-38(l) ("All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years.").  What United States Life neglects to point out is that

---

[5] The court reads Herring's use of "Plaintiff" when describing which party had to meet additional conditions (Answer, 5 ¶ 8) as a scrivener's error; the party should have been "Defendant" or some other indication that he was referring to himself.

9

Herring's claim for fraud did not accrue until he *discovered* the fraud, and United States Life can rely on no alleged facts to pinpoint accrual at the time the fraud occurred, *see supra* p. 2. Ala. Code. § 6-2-3 ("In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action."). Because United States Life has not met its burden of showing, based on Herring's allegations, that the statute of limitations has run, the court cannot find at this stage that the statute of limitations bars this counterclaim.

### *Counterclaim Three: Reckless/Mistaken Misrepresentation/Suppression*

Herring's third counterclaim is apparently for reckless and mistaken misrepresentation. (*See* Answer, 6 ¶¶ 11-13.) The only difference between willful and reckless misrepresentation is the state of mind ("willfully to deceive" or "recklessly without knowledge," § 6-5-101), and Herring has alleged recklessness (Answer, 6 ¶ 12). "Conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), and Herring incorporated the facts sufficient for fraudulent misrepresentation and suppression in prior counterclaims,[6]

---

[6] In this regard, however, Herring's counterclaims are inartfully pled. He indiscriminately incorporates the prior paragraphs of his counterclaims into subsequent ones without distinguishing which prior paragraphs are directly relevant. The Eleventh Circuit more than once has reprimanded parties for filing such "shotgun" claims which "typically . . . contain[] several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 (11th Cir. 2002) (highlighting the Eleventh Circuit law addressing "on numerous occasions, in the past, often at great length and always with great dismay" the problems with these shotgun complaints, *id* at 1296 n.9; *accord id.* at 1296 & n.10).

*see supra* pp. 6-9.  Yet Herring's third counterclaim cannot stand for the reasons laid out in the consolidated discussion of the promissory fraud challenge.  *See infra* pp. 11-14.

*__Counterclaim Four: Negligent/Wanton Failure to Procure Insurance Coverage__*

Herring's fourth counterclaim is due to be dismissed for failure to state a claim.  He alleges negligent or wanton failure to procure insurance coverage (Answer, 6 ¶ 15), but as United States Life explains (Pl.'s Mem. in Supp. of Mot. to Dismiss, 11-12), this cause of action "is not an action based on contract between the insured and the insurance company, but an action based on an agency relationship between the insured and the agent who represents the insurance company," *Armstrong v. Life Ins. Co. of Va.*, 454 So. 2d 1377, 1379 (Ala. 1984), *overruled on other grounds*, *Hickox v. Stover*, 551 So. 2d 259, 264 (Ala. 1989).  Herring's fourth counterclaim fails because he cannot allege this cause of action against the insurance company alone; no agent is a co-defendant in the case.

*__Counterclaims One through Four: Promissory Fraud Challenge__*

United States Life argues in its reply that Herring's fraud-based counterclaims – one through four – in the best case scenario, are claims for promissory fraud.[7]  (Pl.'s Reply, 2 & n.1.)  Under this theory, Herring must allege, which he has not, that at the time of the statements, United States Life "had the intention not to perform the act promised and possessed an[] intent to deceive."  (Pl.'s Reply, 2-3.)  Herring argues, however, that in *Allstate Insurance Co. v. Hilley*, 595 So. 2d 873 (Ala. 1992), the Supreme Court of Alabama

---

[7] Because the court has already dismissed counterclaim four, the court's promissory fraud analysis is relevant only to counterclaims one through three.

11

held that *representations* about an insurance policy were not promises to act in the future but "pertained to [the insurer's] obligations under the insurance policy" (Def.'s Surreply, 2). In *Hilley*, the court held that Allstate's agent's statement that Allstate would rebuild the house, replace the house, or pay a certain amount if a fire destroyed the insureds' house "[was] a representation of the insurance coverage that the [insureds] were purchasing. The statement was not a promise to act in the future. It was, rather, represented to the [insureds] as a present fact of Allstate's obligations under the insurance policy." *Hilley*, 595 So. 2d at 876. The court agrees that *Hilley* supports Herring's argument; counterclaims regarding misrepresentations and omissions *about* the insurance policy's coverage do not fall under promissory fraud, *id.*

United States Life is correct that "a party experiencing a failure to perform a contract in the typical situation cannot characterize the other party's promise to perform as a misrepresentation and thereby convert the action to one based upon a tort of fraud." (Pl.'s Reply, 2.) But *representations* outside of the contract terms can be a basis for tort claims. *Exxon Mobil Corp. v. Alabama Department of Corrections and Natural Resources* discusses this distinction:

> We analyze the circumstances governing the availability of a remedy in tort between parties to a contract by first noting the long-standing rule applicable to fraudulent conduct *during negotiations*, an interval that concludes when the parties strike their bargain and enter into a contract. A party who has been the victim of a misrepresentation of a material fact or the suppression of a material fact when there is a duty to speak upon which it reasonably relied *during negotiations* can claim fraud in the inducement. *See, e.g., Lacey v. Edmunds Motor Co.*, 269 Ala. 398, 402, 113 So.2d 507, 510

12

> (1959) ("It is a well-established principle in Alabama that a buyer alleging that he was induced by fraud to enter into a contract may rescind by restoring benefits and recover payments, or affirm, retain benefits, and sue in deceit for damages . . . ."). In such cases, the aggrieved party, in effect, says, "I would never have entered into the contract if you had not induced me to do so by incorrect statements or omissions of material facts." Regardless of whether the remedy is rescission or deceit, a plaintiff can recover punitive damages when the conduct was reckless or intentional. *See Old Southern Life Ins. Co. v. Woodall*, 295 Ala. 235, 326 So. 2d 726 (1976) (action in deceit for damages); and *Mid-State Homes, Inc. v. Johnson*, 294 Ala. 59, 311 So. 2d 312 (1975) (action for rescission). . . .
>
> After becoming bound to the terms of a contract, subsequent events can, but as a general rule do not, give rise to a remedy in tort. Failed expectations as to performance of a contract usually result only in a remedy for breach of contract. *See C & C Prods., Inc. v. Premier Indus. Corp.*, 290 Ala. 179, 186, 275 So. 2d 124, 130 (1974) ("A mere failure to perform a contract obligation is not a tort, and it furnishes no foundation for an action on the case."). Thus, a party experiencing a failure to perform a contract in the typical situation cannot characterize the other party's promise to perform as a misrepresentation and thereby convert the action to one based upon the tort of fraud. However, if a promise to perform in the future is made with no intention to perform *at the time the promise was made*, it is promissory fraud and will give rise to an action in tort for which compensatory and punitive damages may be recovered. *Kennedy Elec. Co. v. Moore-Handley, Inc.*, 437 So. 2d 76 (Ala. 1983). Such a claim is difficult to prove, because mere failure to perform is not evidence of a lack of intent to perform at the time the contract was formed. *Campbell v. Naman's Catering, Inc.*, 842 So. 2d 654 (Ala. 2002) (summary judgment in favor of employer).

*Exxon Mobil Corp. v. Ala. Dep't of Corr. & Natural Res.*, 986 So. 2d 1093, 1129-30 (Ala. 2007) (Lyons, J., concurring). Because Herring claims that he entered into the contract *based upon* United States Life's representations or omissions, his counterclaims allege misrepresentation, not veiled contract claims (Answer, 4 ¶ 1; *see also* Answer, 5-6 ¶ 9; Def.'s Resp., 2 ("Based upon these representations, [Herring] purchased and maintained the

disability insurance policy.").)  The allegation suggests that the representations were antecedent to the contract.

Herring's allegations ultimately fail, however, because they are not sufficiently detailed under Rule 9.  He has provided no information about the source or details of the misrepresentations beyond the fact that United States Life generally presented them, or about when and how they were made.  (*See, e.g.*, Pl.'s Mem. in Supp. of Mot. to Dismiss, 6 ("In raising that claim, Defendant must disclose precisely what allegedly fraudulent statements were made, when they were made, where they were made, and who made them.").)  Nor has Herring described, even minimally, what omissions he claims are required outside of those in the contract.  Only if Herring pleads such allegations with more specificity will the court be assured that these counterclaims indeed allege fraudulent misrepresentations rather than disguised breach of contract claims.  For these reasons, the court will dismiss Herring's first, second and third counterclaims, with leave to replead with sufficient particularity under Rule 9(b).

*Counterclaim Five: Breach of Contract*

Herring's fifth counterclaim is for breach of contract. (Answer, 7 ¶ 18.)  United States Life asks the court to dismiss this counterclaim as redundant.  (Pl.'s Mem. in Supp. of Mot. to Dismiss, 12 (describing the counterclaim as "unnecessarily duplicat[ing] claims already before [the] [c]ourt").)  Similar cases, however, have proceeded in this circuit without dismissal of such counterclaims.  *See, e.g., Mega Life & Health Ins. Co. v. Pieniozek*, 516

F.3d 985, 988 (11th Cir. 2008) (insurance company brought suit for declaratory judgment on a policy because of insured's alleged misrepresentations and insured counterclaimed for breach of contract and bad faith); *Allstate Ins. Co. v. James*, 845 F.2d 315, 316 (11th Cir. 1988) (case where insurance company filed complaint for declaratory judgment that policy was null and void and insured counterclaimed for breach of contract and bad faith).[8]  If a counterclaim "merely restates the issues as a 'mirror image' to the complaint, the counterclaim serves no purpose," *Fed. Deposit Ins. Corp. v. Project Dev. Corp.*, No. 86-5490, 1987 WL 37488, at *3 (6th Cir. May 27, 1987), but the court declines to find that the breach of contract issues mirror those for declaratory relief and rescission.  The court elects to retain the claim, and United States Life has provided no authority to decide otherwise.

***Counterclaim Six: Abnormal Bad-Faith Refusal to Pay (Created a Debatable Reason)***

Herring and United States Life disagree about what the sixth counterclaim alleges.  Incorporating all prior paragraphs, Herring alleges that United States Life was "under a duty to use good faith in handling [his] claim," that it "intentionally and in bad faith failed and refused to pay benefits due under the [] policy of insurance by manufacturing a reason not to pay [the] benefits," and that Herring was injured as a result. (Answer, 7 ¶¶ 20-23.)  United States Life categorizes those allegations as a "normal" refusal to pay claim, as opposed to an "abnormal" refusal, and argues that the complaint on its face renders it impossible for

---

[8] *See also Quanta Specialty Lines Ins. Co. v. Investors Capital Corp.*, No. 06 CIV. 4624, 2008 WL 1910503, at *6 (S.D.N.Y. Apr. 30, 2008) ("In declaratory judgment actions brought by insurers, courts in [that] district routinely allow an insured to assert counterclaims for . . . breach of contract.").

Herring to claim one of the elements of a normal refusal claim, "the absence of any reasonably legitimate or arguable reason for that refusal." (Pl.'s Mem. in Supp. of Mot. to Dismiss, 12-13.)  Herring in his response argues that his claim was instead a claim for abnormal bad-faith refusal.  (Def.'s Resp., 6.)

The allegations in the sixth counterclaim track an abnormal refusal claim, which requires a showing that the insurer "(1) intentionally or recklessly failed to investigate the plaintiff's claim; (2) intentionally or recklessly failed to properly subject the plaintiff's claim to a cognitive evaluation or review; (3) created its own debatable reason for denying the plaintiff's claim; or (4) relied on an ambiguous portion of the policy as a lawful basis to deny the plaintiff's claim." *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293 (Ala. 1999).  The manufacturing a reason allegation tracks the third type of abnormal refusal claim – one for creating a debatable reason for denying the claim.  Herring says nothing about the other elements of a normal claim refusal, such as the absence of a reasonably legitimate reason for the refusal of the claim.  United States Life reads that silence as failing to state a normal refusal claim, but the court reads the allegations as sufficient to state a claim under an abnormal refusal theory.  (*See* Def.'s Resp., 5-6.)

***Counterclaim Seven: Abnormal Bad-Faith Refusal to Pay (Failed to Investigate)***

Herring's seventh and final counterclaim alleges a different type of abnormal bad-faith refusal case, a claim for failing to investigate Herring's claim (Answer, 8 ¶ 25). *See supra* (describing bad-faith refusal claims).  Bad-faith refusal claims for failure to investigate

16

require proof "(1) that the insurer failed to properly investigate the claim or to subject the results of the investigation to a cognitive evaluation and review and (2) that the insurer breached the contract for insurance coverage with the insured when it refused to pay the insured's claim." *Slade*, 747 So. 2d at 318.  United States Life claims that it has not denied Herring's *claim* but has rescinded his policy.  (Pl.'s Mem. in Supp. of Mot. to Dismiss, 15.)  According to papers United States Life voluntarily submitted with its motion to dismiss,[9] however, United States Life *did* deny Herring's claim.  (*See* Pl.'s Mot to Dismiss Ex. D (Letter dated Dec. 6, 2007, informing Herring that his disability claim was denied).)  United States Life also rescinded the policy.  At the motion to dismiss stage, it appears the rescission of the policy may be the justification for denying the claim, but the claim was denied nonetheless.

***Summary***

The renewed motion to dismiss is granted and dismissal without prejudice is warranted with respect to counterclaims one through three, with leave to replead, and with respect to counterclaim four.  The parties are reminded, however, that the standard of review on a Rule 12(b)(6) motion to dismiss does not address the *merits* of those or the remaining counterclaims.

---

[9] United States Life encourages the court to consider papers it attached to its motion to dismiss without converting it into a summary judgment motion.  (*See* Pl.'s Mem. in Supp. of Mot. to Dismiss, 2 n.1.)  It would be the same result with or without consideration of those papers based on the allegations.

## V. CONCLUSION

For the foregoing reasons, it is ORDERED that Defendant United States Life's renewed motion to dismiss (Doc. # 39) is DENIED in part and GRANTED in part as follows:

(1)     The motion to dismiss is DENIED with respect to counterclaims five through seven.

(2)     The motion to dismiss is GRANTED with respect to counterclaims one through three.  Counterclaims one through three are DISMISSED without prejudice, and Herring is GRANTED leave to amend those counterclaims **on or before November 24, 2008**.

(3)     The motion to dismiss is GRANTED with respect to counterclaim four. Counterclaim four is DISMISSED without prejudice.

DONE this 14th day of November, 2008.

         /s/  W.  Keith Watkins
UNITED STATES DISTRICT JUDGE